Opinion
 

 FROEHLICH, J.
 

 We deal here with two petitions for extraordinary relief arising from two superior court actions, which were consolidated for all purposes. The petitions have also been filed with this court in consolidated form, and we treat them as consolidated for all purposes.
 

 The petitioners here and plaintiffs in the superior court are Anthony Alfred Ciani, an individual (Ciani), and the California Coastal Commission (Coastal Commission). The defendant in the superior court and real party in interest responding to the petitions in this court is San Diego Trust and Savings Bank, as trustee of the Jack M. Mosher and Alice F. Mosher Trust (referred to herein as Mosher Trust or simply Trust). The dispute involves the attempts
 
 *1024
 
 by the Mosher Trust to achieve demolition of old structures located on land it owns in La Jolla. Ciani, as an interested third party, and the Coastal Commission contend the Trust has illegally commenced demolition of the structures and ask this court to issue a writ of supersedeas or other extraordinary relief restraining such demolition. We issued a temporary restraint, and now consider whether to extend the temporary order or to grant other relief. We conclude that the superior court erred in certain crucial conclusions of law it reached in the interpretation of statutes and administrative regulations. We therefore issue the writ of supersedeas, reversing the court’s order which denied a preliminary injunction, and remand the case to the superior court for further proceedings.
 

 Factual and Procedural Background
 

 The Mosher Trust has long owned land on Prospect Street and Coast Boulevard in La Jolla. The realty is improved with several structures, four of which are the subject of this action. These structures were originally built in the early 1900’s and became known as the “Green Dragon Colony.” The buildings were used over the years for both residential and commercial purposes, but in current times have been unoccupied. Those who seek preservation of the structures see them as representative of the “village” nature that once was La Jolla and contend they have historic significance warranting their preservation. The Mosher Trust emphasizes that the buildings themselves are poorly designed and it is uneconomic to maintain or improve them. It refers to them throughout pleadings and petitions as the “Dilapidated Structures.”
 

 In 1973 the historic site board (Board) designated the Green Dragon Colony site as an historic landmark, but declined to include the structures themselves in any historic category for preservation. The Board reconsidered the status of the buildings in 1986, based upon a request and evidence submitted by Ciani, and designated the four structures as historic buildings. This designation triggered an obligation under the California Environmental Quality Act (CEQA) for the preparation of an environmental impact report (EIR) as a precondition to issuance of a demolition permit (see
 
 San Diego Trust & Savings Bank
 
 v.
 
 Friends of Gill
 
 (1981) 121 Cal.App.3d 203, 212 [174 Cal.Rptr. 784]). In 1987 the Trust filed an application with the city for a demolition permit, and caused commencement of the preparation of the EIR. After several public hearings, a draft report was filed and circulated. On October 11, 1988, the city council certified the EIR as being in compliance with CEQA, and appropriate notice and posting of this action was thereafter achieved.
 

 In that the realty is located on a bluff overlooking the ocean in La Jolla, it is within the California coastal zone. The demolition of the Green Dragon
 
 *1025
 
 Colony structures therefore required the obtaining of a coastal development permit. (Pub. Resources Code, §§ 30600, 30106.) The application for a coastal development permit was made to the City of San Diego, which acted as the delegated agency to administer local coastal permits (see Pub. Resources Code, § 30600.5). This application was made on February 8, 1990.
 

 The city took no adequate action (at least as revealed by our record) on the coastal development permit application or the demolition application. As a result, the Trust attempted to invoke the provisions of the Permit Streamlining Act (hereafter sometimes referred to as Streamlining Act or the Act).
 
 [1]
 
 (Gov. Code,
 
 [2]
 
 § 65921 et seq.) The provisions of this Act purport to provide automatic approval of permit applications upon which no action is taken by the responsible agency for a specified period of time. It appears that the EIR prepared for the project had been approved and the application for demolition permit had long been on file. The final condition to the project, therefore, was the coastal development permit. It is conceded by the parties, and the definitional provisions of the Act compel the conclusion, that an application for a local coastal permit, made to the delegated coastal agency, is an application for a “development project” covered by the Act. (See §§ 65027-65934.)
 

 Section 65950 provides that the lead agency shall have one year from the filing of a completed application to approve or disapprove the project. Section 65956, as amended in 1987, provides that failure to act within such period shall result in “deemed approval” of the project. A condition to this “deemed approval,” however, is that (a) the applicant give the agency 7 days’ notice of its intent to give public notice, and (b) the applicant then give public notice (if the agency declines or omits to do so), not earlier than 60 days from the expiration of the time period in question, that the project is to be approved at the expiration of the 60-day period if the agency has not acted.
 

 On February 14,1991, the Trust sent a letter to the planning director of the City of San Diego in accordance with the seven-day notice provision of section 65956, subdivision (b). Seven days following this notice, in order to comply with the second condition of section 65956, subdivision (b), the Trust caused a public notice to be sent to neighboring landowners and
 
 *1026
 
 interested parties, specifying that “notice is hereby given that unless the City of San Diego takes action in this matter within sixty (60) days, Coastal Development Permit No. 90-0199 shall be deemed approved.” While the one-year period for approval of the permit expired on February 8, 1991, the sixty-day period following the date of public notice would not have expired until April 21, 1991.
 

 The Trust on June 28, 1991, brought an action in superior court against the city for writ of mandate and declaratory relief, praying that the demolition permit and the coastal development permit be deemed approved, and also that the city be affirmatively required to issue the permits. On July 10, 1991, the city and the Trust entered into a stipulated agreement to issue the permits, and on the same day the permits were issued. Demolition of the four structures apparently commenced immediately, as an expert witness for the Trust later testified that as of July 11, “[i]t is my opinion that the four buildings which have been previously at the Green Dragon property have been demolished.” Petitioners dispute the total demolition of the structures, however, and no factual determination one way or the other was made by the superior court. We assume for purposes of our hearing, therefore, that the structures have not been completely demolished.
 

 Ciani and the Coastal Commission filed their petitions in this case on July 10, 1991. The Ciani petition sought a temporary restraining order and preliminary and permanent injunctions enjoining the issuance of demolition permits and the actual destruction of the buildings. The Coastal Commission petition prayed for the same relief and in addition asked for the imposition of civil penalties and punitive damages. The Ciani petition alleged in general terms the failure of the Trust to follow proper permit procedure. The Coastal Commission’s petition more specifically relied upon a contention that any permit issued by the city could not become effective until a 10-day appeal period had passed, and hence the commencement of demolition on the day of issuance of the permit was a violation of the Coastal Act. On July 11, 1991, the superior court issued a temporary restraining order halting further demolition. The court then held a hearing on July 30, 1991, and ruled that the petitioners were not entitled to relief. A formal order denying the preliminary injunctions was filed July 31, 1991. The superior court stayed enforcement of this order, however, to permit application to this court for relief. We have stayed further demolition of the buildings pending this hearing.
 

 The issue before this court, therefore, is whether the superior court erred in failing to issue a preliminary injunction. Ordinarily the superior court is vested with broad discretion in determining whether to grant or deny a preliminary injunction which would halt an owner’s action on his land.
 
 *1027
 
 (See 6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, §§ 288-290, pp. 247-249.) Where the grant or denial of a preliminary injunction is dependent upon construction of a statute, however, and the matter is purely a question of law, the standard of review is not whether discretion was appropriately exercised but whether the statute was correctly construed.
 
 (Bullock
 
 v.
 
 City and County of San Francisco
 
 (1990) 221 Cal.App.3d 1072, 1094 [271 Cal.Rptr. 44].) The principal issues raised by these writ petitions involve construction of the Streamlining Act, and its interrelation with the California Coastal Act. We therefore accord independent review of the issues of statutory construction raised by the petitions. We also note that the California Coastal Act prescribes special pendente lite protection of the status quo when a violation of the Coastal Act is indicated. Public Resources Code section 30803 provides: “On a prima facie showing of a violation of this division, preliminary equitable relief shall be issued to restrain any further violation of this division.”
 

 Particularly in this case, appellate review of the court’s denial of a preliminary injunction is appropriate, since the core purpose of the action is to preserve buildings of alleged historic significance, which purpose would become moot if the buildings were to be razed during the litigation. (See 6 Witkin, Cal. Procedure,
 
 supra,
 
 Provisional Remedies, §§ 253-256, at pp. 220-222.) We therefore undertake an in-depth review of the substance of the petitions.
 

 Discussion
 

 I
 

 Question of Compliance with CEQA
 

 Ciani contends that, regardless of the other issues and questions involved in a determination of the Trust’s demolition entitlement, the trial court should have ruled in favor of the petitioners’ position because the Trust did not comply with the requirements of the CEQA. The Green Dragon Colony structures had been designated historic buildings by the Board. Therefore, before a permit could be issued for their demolition it was necessary that an EIR be prepared and certified by the lead agency—in this case the City of San Diego.
 
 (San Diego Trust & Savings Bank
 
 v.
 
 Friends of Gill, supra,
 
 121 Cal.App.3d 203.) Ciani presented evidence to the court to the effect that the city had never accepted and certified the EIR which was prepared for the project. Ciani contends (1) the city’s action in fact was to further stay demolition, (2) the resolution approving the EIR was an alternative resolution which the City did not adopt, and (3) the certification of adoption of the resolution approving the EIR by the city clerk was an error.
 

 
 *1028
 
 The difficulty with Ciani’s position is that the question of the city’s certification of the EIR was made an issue at the superior court hearing, the court was asked to rule on it, and the court made its ruling. It found that the city on January 4, 1989, had accepted and certified the EIR, and further determined that the 30-day period within which a challenge to the EIR could be raised had expired. This determination was a finding of fact by a trial court based upon conflicting evidence presented to it.
 

 Our review of factual determinations made by the superior court is a search for substantial evidence in support of the finding. If such substantial evidence exists, the trial court’s finding must be affirmed even though other inferences or conclusions from the evidence might have been drawn. (9 Witkin, Cal. Procedure (3d ed.-1985) Appeal, § 278, pp. 289-291.) This general rule of appellate review is applicable to review of factual determinations made in hearings upon petitions for preliminary injunctions. (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (Rutter 1991) § 8:160, p. 8-41.3.) Here, the trial court had before it a certified copy of a city council resolution showing adoption of the EIR, as well as evidence of proper public posting. Ciani presented evidence to the contrary: that the certification of the resolution purportedly adopted was the result of a mistake of the city clerk, and the action actually taken by the city council was to delay acceptance of the EIR. Thus, the evidence was conflicting as to whether the EIR had been accepted and certified. The court’s finding is well supported by evidence. We are not in a position to disturb the court’s ruling with respect to compliance with CEQA requirements as to the permits sought by the Trust.
 
 [3]
 

 II
 

 Appealability of Coastal Development Permits
 

 The demolition permit and coastal development permit were issued to the Trust by the city on July 10, 1991, following filing of the Trust’s action against the city. Public Resources Code section 30603 provides that an
 
 *1029
 
 appeal from the action of a local agency approving a development permit may be filed with the Coastal Commission. The effectiveness of the permit is delayed for a period of 10 days to permit the filing of such appeal, and further delayed until the appeal, if filed, is concluded. An appeal was filed with the Coastal Commission by both Ciani and the Coastal Commission on July 10. Therefore (and particularly in light of the specific equitable relief provided by Public Resources Code section 30803 cited ante)
 
 if
 
 the effective coastal development permit was that issued on July 10, the superior court should have granted the preliminary injunction preventing demolition of the structures pending the appeal.
 

 The Trust rejects this contention by alternative arguments: (1) that its permit was obtained by operation of law under the Streamlining Act, not by virtue of the issuance of a paper permit by the City on July 10; (2) that no appeal is available from a permit obtained under the terms of the Act; and (3) if an appeal is possible from a permit “deemed approved” under the Act, the time for appeal commences on the date of “deemed approval” rather than some later time. For purpose of consideration of these contentions we assume that the Trust has complied with the notice provisions of the Act.
 

 Petitioners contend it is necessary for an applicant, even after complying with the notice and time provisions of the Act, to take action to compel issuance of permits, and no effective permit has been issued until such action succeeds. They suggest the Trust’s implicit agreement with this position because, rather than simply commencing the bulldozing of buildings after having received a “deemed approved” permit, it sought declaratory relief and mandate from the superior court, and commenced actual demolition only after having been issued paper permits by the City.
 

 Petitioners’ argument does not persuade. The nature and purpose of the Act is to terminate delay and require the granting of a permit when a maximum period of time has passed. It may be that practical problems will interfere with the use of a permit which exists only in the eyes of the law, devoid of paperwork or city seal. Contractors and subcontractors may be reluctant to enter upon development projects in the coastal zone without some tangible evidence of permit entitlement. That the Act may not have avoided all practical problems created by agency delay does not, however, in our opinion mitigate against our validating its obvious objective.
 

 We hold that a “deemed approved” permit is a permit which bears all the legal entitlements of a tangible permit issued by the agency. If the applicant sues for declaratory relief in superior court, the declaration of permit entitlement rendered by court judgment ratifies the earlier permit approval acquired by operation of law. Such judgment does not in itself
 
 *1030
 
 constitute the issuance of a new permit. Similarly, the tardy issuance of a paper permit by the agency which has too long delayed in its original obligation should have no effect upon the prior operative date of the permit acquired by operation of law. Hence, in this case the issuance of the coastal development permit by the city after the Trust’s lawsuit was filed should have no effect upon the commencement of the period of appeal from a “deemed approved” permit acquired at an earlier time.
 

 Assuming, then, that the Trust’s coastal development permit was obtained by operation of law, and not by the later action of the city, the Trust contends that no appeal is available. The Trust refers us to the authority for appeals from local grants of coastal permits, Public Resources Code section 30603, subdivision (a), which provides that “an action taken by a local government on a coastal development permit application may be appealed to the commission.” The Trust’s entitlement, it argues, was not obtained as the result of “an action taken” by a local government; indeed, it was the result of inaction by the local government. The trial court ruled in favor of the Trust on this ground. The court was bothered not only by the apparent inapplicability of the appellate provision to permits obtained by operation of law, but also questioned exactly what would be appealed, commenting: “If a permit approved by operation of law could be appealed to the Commission, the Commission would have to conduct an original hearing on the merits, because there would be no record to appeal. This is contrary to the intent of [Public Resources Code section] 30603, which by its terms limits what can happen in this action.”
 

 The Trust argues, further, that the objectives of the Act would be gutted if appeals from “deemed approvals” were permitted. It points out that administrative appeals are provided at numerous stages in permit applications in general, and contends that if the administrative appeal at each stage were held preserved, the desired automatic application of the Act would be severely undermined. The Trust’s argument raises hypothetical applications of administrative appeal rights in situations not presently before us and which we do not have to resolve. We deal here only with the final approval of a coastal development permit by a local agency. The only possible appeal remaining in this case, aside from court challenge, is the statutory appeal to the Coastal Commission.
 

 As we have noted above, the Act was intended to afford an applicant automatic permit relief when the discretionary relief he sought from the public agency has been unduly and wrongfully delayed. The permit the applicant is “deemed” to have had approved is the specific permit described in the application.
 

 
 *1031
 
 When that permit is affirmatively granted by a local agency the right to appeal to the Coastal Commission is specifically preserved. The action necessary for local grant includes hearings and rights of third party appearance, thus providing a procedure for meaningful opposition to the development. Where the permit is obtained by the “deemed approved” mechanism of the Streamlining Act, the parties in opposition are effectively prevented from presenting a case. If a provision for appeal is appropriate following the hearing and appearance procedures which attend the typical method of permit grant, it would seem even more necessary when considered in light of a “deemed approved” permit. If appellate rights were considered extinguished as the result of the city’s inaction, the city could by such inaction deprive third party contestants of all opportunity to object at a public hearing. We cannot believe this to have been the intent of the Streamlining Act.
 

 We are confirmed in this conclusion by section 65922 of the Act, which specifies that the provisions of its chapter (the “chapter” being “Review and Approval of Development Projects,” which is the Permit Streamlining Act) shall not apply to “administrative appeals within a state or local agency or to a state or local agency.” We have seen no administrative, legislative or judicial interpretation of this provision. Lacking any other instruction, however, we must assume it means what it plainly says. The appeal in question is an appeal from a local agency (the City of San Diego) to a state agency (the Coastal Commission). Accordingly, this appeal is in no way affected by the Act.
 
 [4]
 
 We thus reject the Trust’s contention that no appeal is possible from a permit achieved by the “deemed approved” mechanism of the Act, and hold that the statutory appeal provided for agency-issued permits is equally available for permits “deemed approved” by operation of law.
 

 The Trust’s fallback position on the appeal issue is that if an appeal is available from a “deemed approved” permit grant, the time for same commenced on the date of the deemed approval, which was in April 1991.
 
 *1032
 
 The 10-day period for appeal in this case will therefore have long passed. This position would be well taken had the Trust provided the Coastal Commission with notice of the maturing of the “deemed approved” permit. The record indicates, however, that no such notice was given.
 

 As we have noted above, section 65922 specifically provides that the Streamlining Act “shall not apply to . . . (b) [administrative appeals within a state or local agency or to a state or local agency.” Further, the operative provisions of the Act, specifically section 65956, subdivision (b), discuss automatic approval in terms of the
 
 permit.
 
 Nothing in the Act indicates that the issuance of the permit by operation of law is intended in any way to affect appellate procedures. Following adoption of the Streamlining Act the regulations governing appeals of coastal development permits were amended to take into consideration the possibility of appeals from “deemed approved” permits. California Code of Regulations, title 14, section 13571, subdivision (b) requires the applicant to “notify, in writing, the local government and the Commission of his or her claim that the development has been approved by operation of law.” While this regulation does not specifically state that the appeal period commences upon the giving of this notice, such is the only reasonable interpretation to be given to it. California Code of Regulations, title 14, section 13570 provides that a local permit is not deemed complete until all rights of appeal have been exhausted. California Code of Regulations, title 14, section 13571, subdivision (b)(2) states that an application approved by operation of law “may be appealed to the Commission pursuant to Section 13110 et seq.” Additionally, California Code of Regulations, title 14, section 13110 states that the “ten working day appeal period shall be established from the date of receipt of the notice of the final local government action.”
 

 The Trust urges us to find that these regulations are invalid as being inconsistent with the statute (citing the principle that administrative regulations which are contrary to legislative acts are null and void,
 
 Morris
 
 v.
 
 Williams
 
 (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]). As we have previously noted, however, since we find nothing in the Streamlining Act indicative of an intention to preclude appeals, administrative regulations addressing the subject of such appeals are consistent with the Act. Additionally, we recognize that the Legislature made significant amendments to the Streamlining Act in 1987, at which time the detailed notice provisions now contained in section 65956 were added. It is presumed that the Legislature at that time was aware of the then existing Coastal Commission regulations. (Cf.
 
 Rosenthal
 
 v. Cory (1977) 69 Cal.App.3d 950, 953 [138 Cal.Rptr. 442].) That it made no mention of the regulations pertaining to appeals of coastal permits indicates an expectation that the regulations would continue in force. (See 58 Cal.Jur.3d, Statutes, § 112, pp. 499-500.)
 

 
 *1033
 
 A practical approach to the concept of appealing a “deemed approved” permit also supports the conclusion that notice to the Coastal Commission is necessary to commence the 10-day appeals period. When a local coastal agency has granted a permit it can be expected that it will comply with the notice provisions of section 13110 of title 14 of the California Code of Regulations and that the Coastal Commission and others interested in opposing the issuance of the permit will receive notice and have an opportunity to file a timely appeal. Where the permit is granted under the terms of the Streamlining Act, however, unless either the local agency or the applicant gives notice of the passage of the requisite time period, the commission (as well as opposing parties) will have no practical means of knowing the date of the permit issued by operation of law.
 

 The original version of the Streamlining Act imposed no general notice provisions upon an applicant. The automatic granting of a development permit by operation of law after the passage of the requisite period of time, without any notice to interested or affected third parties, was held in
 
 Selinger
 
 v.
 
 City Council
 
 (1989) 216 Cal.App.3d 259 [264 Cal.Rptr. 499] to be an unconstitutional deprivation of rights. To remedy this defect the Legislature adopted the notice provisions now contained in section 65956, subdivision (b). The practical effect of the new notice procedure is to permit the applicant to undertake the notice which the agency has defaulted in giving. It is not an unreasonable extension of this philosophy to conclude that it falls also upon the applicant to give the minimal notice specified by Coastal Commission regulations.
 
 [5]
 

 The record presently before us indicates that no notice was given to the Coastal Commission of the deemed approved permit. The record indicates that the first notice received by the Coastal Commission was the notice given of the paper permit subsequently granted by the city on July 10,1991. In that we have concluded that the giving of notice is a condition to the commencement of the 10-day period for appeals, we must find that the permit sought by operation of law under the Streamlining Act, if we assume the same to
 
 *1034
 
 have been issued in April, was not final and continued subject to appeal through July 20,1991. We therefore find that the presently pending appeal is viable and that the superior court is obliged to continue whatever temporary restraints may be appropriate until the appeal is resolved.
 

 Ill
 

 Compliance With the Permit Streamlining Act
 

 We have determined that appeal from a “deemed approved” coastal development permit was not precluded in this case because the notice requisite to commencement of the appeals period was not given. This discussion has assumed compliance by the applicant with the steps necessary to achieve a “deemed approved” permit in the first instance. While our review of compliance with these steps may now seem unnecessary, we are moved to complete an assessment of the status of the parties. We can be only sympathetic with the efforts of the applicant, the Coastal Commission and other interested parties to comply with the detailed yet extremely difficult to comprehend statutes and regulations which must be combined and reconciled in order to weave the fabric of the law and procedure of the Streamlining Act. We therefore proceed to review the adequacy of the applicant’s initial efforts to obtain a “deemed approved” permit.
 

 The heart of the Act is contained in section 65956, subdivision (b) which, as amended in 1987, provides:
 

 “In the event that a lead agency or a responsible agency fails to act to approve or to disapprove a development project within the time limits required by this article, the failure to act shall be deemed approval of the permit application for the development project. However, the permit shall be deemed approved only if the public notice required by law has occurred. If the applicant has provided seven days’ advance notice to the permitting agency of the intent to provide public notice, then no earlier than 60 days from the expiration of the time limits established by Sections 65950 and 65952, an applicant may provide the required public notice using the distribution information provided pursuant to Section 65941.5. If the applicant chooses to provide public notice, that notice shall include a description of the proposed development substantially similar to the descriptions which are commonly used in public notices by the permitting agency, the location of the proposed development, the permit application number, the name and address of the permitting agency, and a statement that the project shall be deemed approved if the permitting agency has not acted within 60 days.”
 

 The Trust gave the seven-day notice to the city; there is no contention that it did not comply with this first requisite of the “public notice” requirement
 
 *1035
 
 of section 65956, subdivision (b). The petitioners’ attack on the adequacy of the Trust’s public notice is directed to the second notice requirement: the 60-day notice. Petitioners contend that neither the content nor the distribution of the 60-day notice was in compliance with the statute. In an aid to assessment of the validity of these objections, we attach the notice which the Trust gave, in its entirety, as an appendix to this opinion.
 

 There is a point of serious dispute between the petitioners and the Trust as to the statutory and administrative provisions which specify the content and distribution of the “public notice.” The Trust contends the content is specified by section 65956, subdivision (b) and the distribution is governed by San Diego Municipal Code section 101.0220 (which provides that notice be given by the planning director for public hearings of action on subdivision maps, permits, variances, etc.). The petitioners, on the other hand, assert that the content and distribution of the public notice is as specified by California Code of Regulations, title 14, section 13565 (the provisions pertaining to notices of applications for appealable coastal development permits).
 

 We first address the question of the substance of the notice. Section 65956, subdivision (b) states that the notice “shall include” an enumerated list of information. This might suggest that material other than that set forth in the enumerated list should be included. Our review of the list, however, convinces us that the information set forth in section 65956, subdivision (b) is embracive of all the knowledge that an interested person reasonably needs in terms of preparing to oppose the “deemed approval” of the permit. Section 65956, subdivision (b) requires a description of the proposed development and its location, the permit application number, the name and address of the permitting agency, and a statement that the project shall be deemed approved if it has not been acted upon within 60 days of the notice.
 

 The additional information specified by the notice provisions of both the Municipal Code section and the Coastal Commission’s notice regulation relates to notices of hearings. Since no hearing is contemplated by the Act, references to the date and time of a hearing and a description of the procedure to be utilized at the hearing would be not only inaccurate but confusing. Further, section 65956, subdivision (b) by its terms does not purport to require any information in the 60-day notice other than that contained in its own required list. We conclude, therefore, that the substance of the 60-day notice is as prescribed by section 65956, subdivision (b), and not by any administrative regulation. We have compared the information contained in the notice given by the Trust, as shown in the appendix, and find that it substantially complies with the information set forth in section 65956, subdivision (b).
 

 
 *1036
 
 With respect to the
 
 distribution
 
 requirements of the 60-day notice, however, we accept the petitioners’ contention. Section 65956, subdivision (b) provides that the 60-day notice shall be given “using the distribution information provided pursuant to Section 65941.5.” Section 65941.5 refers to “public notice distribution requirements under applicable provisions of law.” Since the Act pertains to a multiplicity of other statutory and regulatory provisions, which deal with all manner of development projects, we apprehend that the reference to “applicable provisions of law” must mean those notice distribution provisions which govern the particular permit in question. In our case, while the municipal code section cited by the Trust, i.e., San Diego Municipal Code section 101.0220, may govern distributional requirements for the demolition permit, the distributional requirement for a coastal development permit is governed by regulations (found in both the Coastal Commission’s regulations and the municipal code) which specify a more expansive set of parties entitled to notice of the proposed action.
 

 Looking to the notice given by the Trust, it appears that all parties owning or occupying land within a specified distance of the Green Dragon Colony were given notice, as well as all parties and entities that had appeared in the prior proceedings or had given notice of interest therein. Some 170 persons or entities were notified, including the San Diego planning department, the La Jolla Town Council, Mr. Ciani, the San Diego Historical Society, the historical sites board, the La Jolla Historical Society, and the La Jolla Light. The service appears to have complied with many of the requirements of the Municipal Code.
 

 However, a review of the notice distribution requirements pertaining to coastal development permits, under both the Coastal Commission’s regulations (see Cal. Code Regs., tit. 14, § 13565) and the municipal code (see San Diego Mun. Code, §§ 105.0206(A), 105.0211.1(B)), reveals at least one additional entity to be notified—the California Coastal Commission. The Coastal Commission contends that, as well as not being notified of the effective issuance of the “deemed approved” permit, it never received the original 60-day notice. Since the “deemed approval” provided by section 65956 is absolutely conditioned upon compliance with the notice provisions of that section, failure to give complete notice will preclude the “deemed approval” of the permit.
 
 [6]
 

 
 *1037
 
 Conclusion and Disposition
 

 Based upon our review of the evidence submitted to the trial court, and to some extent augmented by material filed in our court, we must conclude that (1) the notice given under section 65956 was insufficient to cause activation of the coastal development permit by operation of law, and (2) that even were we wrong in this conclusion no notice of the deemed approved permit was given upon its becoming effective sufficient to start an appeals period running. In the state of the present record, therefore, we conclude that the effective permit obtained by the Trust is that issued by the City on July 10. Assuming this to be the case, the presently pending appeal to the Coastal Commission was timely filed, and the superior court is obliged to continue in force the restraint against further demolition.
 

 We are mindful, however, that we deal with facts tentatively found, upon the basis of probably incomplete evidence; and that the superior court upon further hearings and in light of additional evidence may find it appropriate to modify the restraining order presently in effect. In light of the present status of affairs, we are obliged to issue the writ of supersedeas, the result of which is to overrule the trial court’s denial of the preliminary injunction. Our order is that the stay of demolition, previously imposed by this court and now in force, shall continue in force until the superior court issues a new ruling. This order does not preclude the superior court from holding further proceedings and from issuing such new preliminary injunctive relief, or a new order denying such relief, as may be in harmony with the above opinion.
 
 [7]
 

 Kremer, P. J., and Huffman, J., concurred.
 

 A petition for a rehearing was denied October 3, 1991, and respondents’ petition for review by the Supreme Court was denied November 27, 1991.
 

 
 *1038
 
 Appendix A
 

 PUBLIC NOTICE
 

 February 21, 1991
 

 Location: The premises located at 1241 and 1243 Coast Boulevard and 1260 and 1268 1/2 Prospect Street, La Jolla, California 92037 also known as the Green Dragon Colony
 

 Permit No: Application for Coastal Development Permit No. 90-0199
 

 Name and Address of Permitting Agency:
 

 The City of San Diego 202 "C" Street San Diego, CA 92101
 

 Description:
 

 Demolition, conducted by hand, of four wood frame structures located on the northern portion of Lots 30 and 31 of Block 59, La Jolla Park Subdivision. The four structures were designated as historic resources by the San Diego Historical Site Board. Other structures on Lots 30, 31 and 32 are not a part of this project.
 

 Pursuant to California Government Code Section 65956, notice is hereby given that unless the City of San Diego takes action in this matter within sixty (60) days, Coastal Development Permit No. 90-0199 shall be deemed approved.
 

 [1]
 

 This legislation was adopted in 1978 in reaction to Dow Chemical Company’s frustration by governmental red tape of its efforts to obtain necessary permits to build a $500 million petrochemical plant. (See discussion and background in Wilson,
 
 Down Stream From Streamlining
 
 (Aug. 1987) 7 Cal.Law. 67; Sahm,
 
 Project Approval Under the California Environmental Quality Act: It Always Takes Longer Than You Think
 
 (1079) 19 Santa Clara L.Rev. 579.) The basic provisions of the act were held constitutional and enforceable in
 
 Palmer
 
 v.
 
 City of Ojai
 
 (1986) 178 Cal.App.3d 280, 291, 292 [223 Cal.Rptr. 542],
 

 [2]
 

 All statutory references are to the Government Code unless otherwise specified.
 

 [3]
 

 We recognize that this factual determination was made in terms of a ruling for pendente lite relief, and that it is subject to further review and consideration by the superior court. Our affirmance of the factual finding similarly relates only to the preliminary determination, and in no way restricts further evidentiary review and determination of this matter by the trial court. See, for example,
 
 Miller & Lux
 
 v.
 
 Madera Canal etc. Co.
 
 (1909) 155 Cal. 59, 62-63 [99 P. 502] (overruled on other grounds in
 
 Peabody
 
 v.
 
 City of Vallejo,
 
 2 Cal.2d 351 [40 P.2d 486]) which states: “The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the rights claimed by him. When the cause is finally tried, it may be found that the facts require a decision against the party prevailing on the preliminary application.”
 

 [4]
 

 The trial judge was concerned as to just what the nature of an appeal from a “deemed approved” permit would be, considering that no hearing at a lower level would have been held, no complete record would be available, and no findings, determinations or ruling would be in existence providing a basis for appellate review. We note, however, that all reviews by the Coastal Commission are, in accordance with its regulations, de novo. (Cal. Code Regs., tit. 14, § 13114.) While, under section 13117 of title 14 of the regulations, only the parties who appeared at the local agency hearings may be permitted to testify at the appellate de novo hearing, any other person may submit comments in writing. Further, section 13118 of title 14 of the regulations provides that the evidence to be considered by the Coastal Commission is not limited to the record before the local government. We gather, therefore, that where the coastal development permit has been acquired by the “deemed approved" method, anyone opposing the permit could present the Coastal Commission with a fiill record of documentary evidence, even if the regulations might preclude oral testimony by parties who had not previously appeared before the local agency.
 

 [5]
 

 The general notice provisions contained in California Code of Regulations, title 14, section 13565 and mirrored in San Diego Municipal Code section 105.0206 require that notice be given to landowners and tenants in the vicinity of the development, to all persons who have requested notice, and to the Coastal Commission. The specific Coastal Commission regulation dealing with notices required following the “deemed approved” permit resulting from inaction (Cal. Code Regs., tit. 14, § 13571, subd. (b)) requires general notice be given by the local government agency, but imposes on the applicant the obligation of giving notice only to “the local government and the Coastal Commission of his or her claim that the development has been approved by operation of law.” Our opinion need go no further than its determination that notice by the applicant is required, at minimum, to the Coastal Commission. We do not reach the question whether notice must also be given by the applicant to interested third parties (although we assume that anyone attempting to comply Mly with these somewhat ambiguous regulations would be well advised to give such complete notice).
 

 [6]
 

 Even though the Trust gave requisite notice to Ciani (and a great many other people), its failure to give notice to the Coastal Commission precludes the “deemed approval” of the coastal development permit for all purposes. Also, we reject the Trust’s contention that section 65945.7 has any impact on this determination. This section specifies that nonprejudicial errors in the giving of notice by governmental entities shall not invalidate action taken by the agency. However, this statement of an administrative harmless error doctrine is specifically applicable
 
 only
 
 to notices and action required to be taken by sections 65945, 65945.3, or 65945.5. These sections contain special notice requirements which are applicable at the time
 
 *1037
 
 an applicant files an application for a permit. These notice requirements are unrelated to the special notice provisions of section 65956.
 

 [7]
 

 We are aware that factors may exist which might impel major modifications in the present stay of demolition. Action by the Coastal Commission denying in part or in whole the pending appeal would warrant modification. A finding of lack of existence of any materially undemolished structures might impel a modification. Also, it is noted that the Trust’s position has been found defective upon the ground of insufficient notice. Notice provisions, however, may be waived; a notice technically inadequate may because of special factual circumstances be deemed substantially to comply with statutory requirements; and a party may be estopped from denying notice. (See, e.g.,
 
 Hopkins
 
 v.
 
 MacCulloch
 
 (1939) 35 Cal.App.2d 442, 451 [95 P.2d 950].) These potential issues were not raised in the trial court and are not now before us. Our ruling does not, however, preclude examination by the trial court of such new issues as may be raised in further hearings.